# Clevenstine's Appeal.

A testator devised a certain amount of money to his married daughter, she to have the use of the same during her lifetime, and after her decease the principal sum to be paid to her children by a former husband—the money to be with her in trust; the principal sum was received from the executor of the will by the husband, with whom the wife joined in a receipt to the executor, in which they bound themselves to pay to the children the principal sum after the decease of the wife. The husband afterwards died, having made his will, in which he bequeathed to his grandchildren the residue of his money at interest, after the payment of his debts and certain legacies : *Held*, that the wife was not entitled to the fund from the estate of her last husband, she being concluded by the payment to her husband before the act of 1848 ; also *held*, that for any part of the principal sum which ultimately was payable to the children of the first husband, and which was presently payable under the will of the last husband to his legatees, security may be required from them under the 49th section of the act of 24th February, 1834, relating to executors and administrators.

THIS was an appeal by John Clevenstine, guardian of the sons of Richard U. Nyce, from the decree of the Orphans' Court of *Chester county.*

Henry Frick died July 24, 1828, leaving a will by which, among

[Clevenstine's Appeal.]

other things he gave and bequeathed to " Catharine Nyce, trustee for the children born of her body, during the coverture of her former husband, she to have the *use of the money during her lifetime,* but after her decease to be paid to her children aforesaid, in equal shares, or their legal representatives, in case of death, *three hundred pounds.*

" The several sums and bequests to be received by my daughter Catharine Nyce are to be *in trust,* and the principal sum so to be received, to be paid to her children or their legal representatives, born of her body during the life of her former husband, share and share alike, after her decease."

Catharine Nyce was the wife of Jacob Nyce.

On the 16th of March, 1833, Henry Frick, executor of said will, paid to Jacob and Catharine Nyce $656.70.

At the time of the payment of this money, Jacob and Catharine Nyce executed a release to Henry Frick, the executor, which, after reciting the will, &c., concludes in this manner :—

"Now know ye, that we, Jacob Nyce, of Charlestown township, Chester county, and Catharine Nyce his wife, trustee as aforesaid, do acknowledge to have had and received from the said Henry Frick, the executor and devisee aforesaid, the aforesaid two sums of money amounting to the sum of $656.70, which is paid to the said Catharine Nyce, as trustee aforesaid, agreeably to the directions of the said will; and which principal sum the said Jacob Nyce and Catharine Nyce severally bind themselves, their heirs, executors, or administrators, to pay over to the children of the said Catharine, agreeably to the directions of the said will, immediately after the decease of the said Catharine; and the said Jacob and Catharine do hereby release, acquit, and for ever discharge the said Henry from the payment of so much of the said bequest."

On the same day, the executor paid to Jacob and Catharine Nyce the further sum of $51.87½, and took their receipt for it " in full of all demands of said estate."

*Jacob Nyce* died on or about Jan. 5, 1842, leaving a will, proved Jan. 12, 1846, of which Wm. Little and Daniel Coffman were appointed executors. By this will he bequeathed to his grandsons, children of R. U. Nyce, the residue of his money at interest, after the payment of his debts and certain pecuniary legacies. The provision was as follows :—

"I give and bequeath to my grandsons, the sons of Richard U. Nyce, all the residue of my money that is at interest, and not otherwise bequeathed, after the payment of my debts and funeral expenses, to be divided amongst them share and share alike, to be paid unto my said grandsons at their respective ages of twenty-one years. And my will is, that in case either of my grandsons shall decease before such time as that part or portion of him so deceased shall become payable, then and in such case the part or

portion of him so deceased shall go and be equally divided amongst the survivor or survivors of them, share and share alike, if more than one. And my will is that the money bequeathed to my grandsons be paid to their guardians within eighteen months after my decease."

By the will of Jacob Nyce he made provision for his widow, which she declined to accept, and sued for and recovered her dower.

The executors settled an account of their administration, which was confirmed without objection, June 15, 1847. In this account they claimed a credit for the payment of debts, funeral expenses, and pecuniary legacies, leaving a balance of $1425.43 due the estate.

June 15, 1847, on the petition of the executors, an auditor was appointed to make distribution of this balance among the parties entitled thereto.

Catharine Nyce, the widow of Jacob, appeared by her counsel before the auditor, and claimed to be paid $708.57, the amount of the money received of Henry Frick, Jr., executor, &c. of Henry Frick, Sr., deceased, with interest from the day of its receipt.

This claim was disallowed by the auditor.

The report of the auditor was confirmed Oct. 26, 1847.

On the same day, Catharine Nyce filed exceptions, objecting to the disallowance of her claim.

On these exceptions, the case was argued in the Orphans' Court, by which a decree was made on the 1st of Feb. 1849, allowing her the whole sum claimed, with interest, from Dec. 25, 1845, the date of the death of Jacob Nyce.

From this decree, the sons of Richard U. Nyce, by their guardian, John Clevenstine, appeal to this court.

The exceptions to the decree were:

1. The Orphans' Court erred in their order and decree by which they strike from the report of the auditor the sum of $1369.98 awarded to the use of Richard U. Nyce, and direct that the executors of Jacob Nyce, deceased, pay, out of the fund in their hands for distribution to Catharine Nyce, widow of deceased, as trustee under the will of Henry Frick, deceased, the sum of $840.35½, being the amount of the trust fund ($708.57½) received by said Jacob Nyce, deceased, in right of his wife, as trustee as aforesaid, together with interest on said fund from the death of the said Jacob Nyce —Dec. 25, 1845, $131.70, to the date of said decree.

2. The court erred in directing the report of the auditor to be modified or changed, the said report being correct both in principle and detail.

3. The court had no jurisdiction of the subject of controversy.

The case was argued by *Lewis,* for appellant.—He contended, 1st.

that the gift to Catharine of the use of the money, is a gift of the money itself during life.

" The bequest of the use of a thing is considered as a bequest of the thing itself." Schriver *v.* Cobeau, 4 *Watts* 130.

Same principle stated by Justice KENNEDY, Garret *v.* Lex, 6 *Watts* 17 ; 2 *Roper on Legacies*, new ed. 1476 ; Clough *v.* Winne, 2 *Mad.* 188.

Naming her as trustee does not alter the character in which she takes and holds the fund so far as regards herself. She is not a trustee for herself. A gift to one for the use of or in trust for himself, is a gift to him.

2. Whatever interest the wife had in the money passed to her husband by virtue of the marriage and of his subsequent reduction of the legacy into possession. Even if the fund were held by another in trust for Catharine, the whole beneficial interest in the fund would be Catharine's, and her husband would be entitled to it. This was decided in Evans *v.* Knox, 4 *Rawle* 66, which is in a great measure decisive of this case. And the case is distinguishable from Jameson *v.* Brady, 6 *Ser. & R.* 466, the decision in that case having rested on the use of the word " own."

Marriage is an absolute gift of the estate of the wife to the husband : 1 *Roper on Property* 166.

In Dakins *v.* Beresford, 1 *Ch. Cas.* 194, the husband is denominated the assignee of the wife. Siter's case, 4 *Rawle* 469; 2 *Barr* 71: Here the legacy was actually reduced to possession by the husband, invested as his own, and lost. The possession on his part was complete, and so far as her interest in the fund extended, it became his. That interest continues as long as she lives, and till she dies he and his representatives are entitled to hold the fund.

3d specification of error:—If Catharine Nyce has a claim to this fund, it is the subject of a suit at law, and the Orphans' Court had no jurisdiction.

*Hemphill*, for appellees.

The opinion of the court was delivered April 15, 1851, by

BELL, J.—We have looked into the case with an anxious desire to support the decree made below in favor of the widow, Mrs. Nyce, but find it is impossible to do so, consistently with authority.

By the terms of the bequest in question, it is clear the legatee was entitled to the possession of the fund given, during her life. It is not a mere gift of the accruing interest—though even that would carry the principal sum—but it is of the use of the money itself during life ; to be paid to her children after her death, and not before. The effect of such a bequest is to make the donee absolute owner of it during the period prescribed; and in this light Mrs. Nyce was to be regarded. But according to a well ascertained

rule, there is nothing in the language employed by the testator indicative of an intent that the legatee should take a separate and distinct interest in the fund, independently of the marital rights of her husband.    Here are no words creative of absolute and uncontrollable dominion in the wife : Jameson *v.* Brady, 6 *Ser. & R.* 466 ; Heck *v.* Clippinger, 5 *Barr* 387 ; Snyder *v.* Snyder, 10 *Barr* 423. It results from this, that the law placed the fund within the power of the husband, to acquire in it, by the exertion of his marital right, just such an interest as his wife took under the will of her father. This right has been exercised by a reduction of the sum bequeathed to the actual possession of the husband, thus transferring the property of the wife, to every intent : Dakins *v.* Beresford, 1 *Ch. Cas.* 194 ; Siter's case, 4 *Rawle* 469 ; Woelpper's Appeal, 2 *Barr* 71 ; for it is almost needless to observe that the participation of the wife in the receipt of the money from the executor, can work no difference in the acquired right of the husband.    Had the bequest been of the use of a specific chattel, there would have been no room for the question whether the reduction to possession by the husband vested him with the ownership of the thing given, for the period fixed by the will.    And I am unaware of any distinction in this respect, between an ascertained sum of money and an article of household furniture, or other movable. .

A distinction in favor of the wife was attempted at the bar, founded upon her supposed nomination. as trustee.    This is, however, a mistake.    She is not named as trustee for herself, which would be an absurdity.    Though the term is awkwardly introduced, it is very clear the testator simply meant to designate her as trustee for the preservation of her children's interests, under some vague apprehension that a trustee was necessary to uphold their postponed claim upon the fund, during the life of the mother.    It is, in fact, simply a gift to the mother during her life, coupled with a trust for her children, to take effect after her death.    But had a trustee for both the mother and children been interposed, it would have worked no change in the result, as is evident from the doctrine discussed in Evans *v.* Knox, 4 *Rawle* 66.    There would still have been a beneficial interest in the wife, which the husband, with the assent of the trustee, might have made his own.    I know of no case under the law, as it stood before the late enactment, where the husband could be balked of the exercise of his marital right, except the single instance of a separate property in the wife.

As the case stands, it does not present a naked trust in the wife, which survives to her, after the determination of the coverture. Even conceding her to be a trustee for herself, it is a trust coupled with a beneficial interest, subject to the power of the husband, and, therefore entirely distinct from the instance of a mere trust, put by the appellee's counsel.    It results from this that, having laid his grasp upon the fund, and thus made it his own, it be-

[Clevenstine's Appeal.]

longs to the estate of the husband during the period it would have been enjoyed by the wife had she been sole. After the determination of that period, it of course goes over to the children designated by the will.

We regret this result, as probably defeating the intention, or, at least, the wishes of the testator; but we cannot help it. If he designed the wife should enjoy his bounty, irrespective of her husband, it is a pity he had not informed himself of the proper method to effect this. Luckily, questions such as this will soon become rare, under the recent improvement made in our law, relative to the rights of married women in property acquired by them.

As it is, the decree below must be reversed, and it is so ordered, and that the sum of $840.35½, directed by the said Orphans' Court to be paid to the said Catharine Nyce, be disallowed. Than this, we can make no further order in respect of the residue of Jacob Nyce's personal estate, as the paper-book does not furnish us with facts to enable us to do so understandingly. If the sum in which the children of Mrs. Nyce by her first husband hold an interest in remainder, is, under the will of the last husband, presently payable to his legatees, the former may require security to be given by the latter, in pursuance of the 49th section of the act of 24th February, 1834.

To enable the parties conveniently to attend to their respective interests, the record will be remitted to the Orphans' Court, with directions for further proceedings.

Decreed accordingly.